1196

LAZER CONSTRUCTION COMPANY, INC., Respondent v. James Bryan LONG and Kathy L. Long, Defendants, of whom James Bryan Long is Appellant.

(370 S. E. (2d) 900)

Court of Appeals

*Joseph G. Wright, III,* and *Ernest C. Trammell,* of *Wright & Trammell,* Anderson, *for appellant.*

*Robert L. Waldrep, Jr.,* Anderson, *for respondent.*

Heard April 20, 1988.

Decided July 11, 1988.

*Per Curiam:*

Lazer Construction Company, Inc., (Lazer) sued James Bryan Long (Long) for the balance allegedly due for the construction of a residence. Long counterclaimed for credits allegedly resulting from deletion of certain items from the building plans and from his payment of certain items. A jury awarded Lazer $24,057.93, the sum requested in the complaint. The trial judge reduced this amount by $2,250.00 to adjust for defects in the work. Long appeals. We affirm.

The issues of merit in this appeal are (1) whether the trial judge should have held as a matter of law that Lazer was not entitled to damages because Long had already paid more than the "Guaranteed Maximum Cost" of the project, (2) whether the trial judge should have directed a verdict for Long on his counterclaim, (3) whether the trial judge erred in charging the jury on waiver, (4) whether the trial judge erred in refusing to admit a letter from Lazer to Long into evidence, and (5) whether there was competent evidence supporting the damages recovered.

We review the pertinent facts. Long consulted Lazer about building a new home. Lazer, with Long's approval, drafted a

contract on forms published by the American Institute of Architects. The contract stated a guaranteed maximum cost of $99,500.00, subject to written change orders prepared according to the contract provisions. The contract also stated the work was to be performed according to the owner's plans and specifications and provided for a contractor's fee of 5 percent over all costs of the project, unless the project, in the absence of approved changes, ran over the guaranteed maximum cost, in which case the owner was to pay only the direct costs.

The contract at the time of execution was based, in part, on an initial set of plans. Several weeks after construction began, Long changed the plans and a new set of plans was submitted. As construction continued, certain items were added, certain items were deleted, and certain items were paid for directly by Long. Lazer expended $140,771.50 on the project and billed Long for this amount. At the time of this action, Long had paid $116,913.57.

## 1. Guaranteed Maximum Cost

Long argues Lazer is not entitled to additional payments because he has already paid more than the guaranteed maximum cost of $99,500.00. He also relies on contract provisions indicating this maximum cost could be changed only by pre-approved written change orders. He also asserts the contract was unambiguous and therefore, the trial judge erred in admitting parol evidence concerning interpretations of its terms and conditions.

Although as Long correctly asserts the contract stated a guaranteed maximum cost, other provisions of the contract indicate this limit was not inflexible. Most notably, the contract specifically provided that in the absence of unapproved changes, Long would pay only direct costs exceeding the guaranteed maximum costs. This provision indicates the parties considered the possibility of cost overruns without agreed-upon changes when they executed the contract. To hold, as Long appears to suggest, that Lazer should forfeit all compensation for costs exceeding the guaranteed maximum price would contradict an express term of the contract. At best, then the contract was ambiguous as to price; therefore, parol evidence was properly admitted to explain the provisions concerning cost.

Moreover, a written contract may be modified by oral agreement even when it explicitly states all changes must be in writing. *Evatt v. Campbell*, 234 S. C. 1, 106 S. E. (2d) 447 (1959). This rule has been applied to building and construction contracts. 17A C. J. S. *Contracts* Section 377, footnote 44(1)(1963). Under this rule, Lazer's failure to execute change orders for additional work did not necessarily preclude recovery if it could show Long approved the changes. On appeal Long does not allege any of the changes were unauthorized. In addition, Lazer presented testimony that Long approved the changes and a list of "authorized extras" totalling $41,271.50 and increasing the contract price to $140,771.50. Furthermore, although Long alleges on appeal that there were cost overruns and questionable charges requiring an audit, he failed to request this relief in his pleadings. Given these facts, then, we hold the evidence reasonably supports the jury's implicit finding that Long approved changes in the project which ultimately increased its cost.

### 2. Long's Counterclaim

Long asserts that he should have received credits totalling $33,886.00 for the costs of certain items deleted from the original plans and items he paid for directly instead of buying them through Lazer. We find no reversible error in the denial of his directed verdict motion on his counterclaim. The most such credits would do on this contract would be to reduce the threshold, *i.e.*, the maximum cost, for which the contract must have approved changes to recover his 5 percent profit. The evidence of Long's approval of the changes would support Lazer's right to recover its entire fee regardless of any alleged adjustment of the contract price.

### 3. Jury Charge on Waiver

The trial judge charged the jury "that where the owner has actual notice of extra work and permits it to proceed without objection, the notice requirement, if any, may be waived." Long argues that Lazer failed to allege waiver either in its complaint or as an affirmative defense to his counterclaim and therefore the charge was improper. We disagree. The issue of waiver would have been

germane only to Long's allegation that change orders were required for additional work. Because Long never mentioned the necessity of written change orders in his counterclaim, it was not incumbent upon Lazer to raise the issue of waiver as an affirmative defense in reply.

#### 4. Letter from Lazer to Long

Long offered into evidence a letter he received from Lazer stating an offer to build the house for $98,500.00, *i.e.*, $1,000.00 less than the guaranteed maximum cost. This letter was dated before the contract was executed. Long read the letter to the jury without objection, but was not allowed to place it into evidence.

Long argues on appeal that the letter should have been received as an exhibit because it was pertinent to any alleged ambiguity about the contract price. We hold the trial judge acted within his discretion in refusing to do this. Long read the letter verbatim in court, and the jury was not instructed to disregard it. Admitting the letter into evidence would have been, at best, cumulative to the testimony concerning it; therefore, any error in excluding it was harmless. *Mali v. Odom*, 295 S. C. 77, 367 S. E. (2d) 166 (Ct. App. 1988).

#### 5. Evidence Supporting Lazer's Damages

Long argues there was no competent evidence showing which costs were attributable to approved changes and which were merely cost overruns. He argues that the list of approved extras constituted work clearly within the scope of the contract; however, he does not assert that any of this work was unauthorized. The contract could have been found to be a cost-plus contract with a limit on the contractor's fee for unapproved changes, in which case, cost overrruns would be relevant only if unapproved changes were made. Because Long does not assert any of the changes were unapproved, the jury could have found all costs claimed by Lazer resulted from approved changes.

For the above reasons, we affirm the trial court's decision.

Affirmed.

GARDNER, CURETON and GOOLSBY, JJ., concur.